HARDSCRABBLE SKI AREA, INC., and another, Respondents, v. FIRST NATIONAL BANK OF RICE LAKE, Appellant.

*No. 160. Argued March 7, 1969.——Decided April 1, 1969.*
(Also reported in 166 N. W. 2d 191.)

336

For the appellant there was a brief and oral argument by *Edward J. Coe* of Rice Lake.

For the respondents there was a brief by *Cletus D. Howard* of Eau Claire, attorney, and *George P. Hoke* and *David W. Larson,* both of Minneapolis, Minnesota, of counsel, and oral argument by *Mr. Howard.*

BEILFUSS, J. The notice of appeal includes both the order of Judge KINNEY dated January 5, 1968, and the order of Judge SCHOENGARTH dated June 5, 1968. Inasmuch as the order of June 5th reconsidered the motion and the order of January 5th *in toto,* we deem the appeal should have been only from the order of June 5th. In any event, all the issues were fully reconsidered in the memorandum and order of June 5th.

For the past year or so this court has been somewhat concerned about a possible overuse of the motion for summary judgment and the voluminous number of appeals from orders overruling motions for summary judgment. We state emphatically that we do not mean that the motion for summary judgment should not be used, it is most appropriate in proper instances, but we are inclined toward a belief that its use has been extended

beyond its original purpose. Recent cases which illustrate this concern are: *Becker v. La Crosse* (1960), 9 Wis. 2d 540, 101 N. W. 2d 677; *Becker v. La Crosse* (1961), 13 Wis. 2d 542, 109 N. W. 2d 102; *Peterson v. Maul* (1966), 32 Wis. 2d 374, 376, 377, 145 N. W. 2d 699; *Spoehr v. Mittelstadt* (1967), 34 Wis. 2d 653, 663, 664, 150 N. W. 2d 502; *Frew v. Dupons Construction Co.* (1968), 37 Wis. 2d 676, 689, 155 N. W. 2d 595; *Schandelmeier v. Brown* (1968), 37 Wis. 2d 656, 658, 659, 155 N. W. 2d 659; *Bank of Commerce v. Paine, Webber, Jackson & Curtis* (1968), 39 Wis. 2d 30, 158 N. W. 2d 350; *Schuster v. Germantown Mut. Ins. Co.* (1968), 40 Wis. 2d 447, 452, 162 N. W. 2d 129.

In *Zimmer v. Daun* (1968), 40 Wis. 2d 627, 162 N. W. 2d 626, we stated at page 631:

"We think sec. 270.635, Stats., providing for summary judgment, does not confer a right to summary judgment but rather confers on the trial court a discretionary power to grant summary judgment when it believes summary disposition of a case is called for. The language of this section provides that 'Summary judgment may be entered' as provided in the section and that 'The judgment may be entered in favor of either party.' In sub. (3) it is provided that a summary judgment 'may be awarded' to the plaintiff although he has not moved therefor if upon motion by a defendant it shall appear to the court that the plaintiff is entitled to such judgment. There is no requirement, however, that the court must do so."

We quote, herein, extensively from the memorandum opinion of Judge SCHOENGARTH because we agree with his conclusions and because it illustrates a situation "which the court shall deem sufficient to entitle him to a trial." It is our opinion that the quoted portion of the statute vests discretion in the trial court as to whether the case should be tried. It follows that an order denying a motion for summary judgment will not be reversed

until it appears that the trial court has abused its legal discretion or has not exercised it.

Portions of the memorandum opinion are as follows:

"It appears from the pleadings that the plaintiff, Casper Hagen, is the owner and operator of a ski area in the vicinity of Rice Lake, Wisconsin, and is an officer of Hardscrabble Ski Area, Inc., a Wisconsin Corporation. He also operates a motel in the City of Rice Lake. The defendant is a banking institution located in that city.

"Early in June of 1965 Hagen contacted the Small Business Administration for a loan of $50,000.00 to make improvements to Hardscrabble Ski Area, and to install equipment for making artificial snow. Sometime prior to June 17th he contacted Elmer J. Einum, executive vice-president of the defendant bank, to see if the bank would participate in the proposed loan to the extent of 10% thereof. Einum told Hagen he would present the request at the next meeting of the board of directors. On June 17th the board agreed to participate, and on June 29th Hagen submitted his application to the Small Business Administration.

"Sometime during the summer of 1965 Hagen contacted a manufacturing concern and ordered the snow-making equipment. He also made arrangements with an engineering firm to plan and supervise the installation of this equipment. He arranged for delivery of the equipment around the first of September, and for the engineers to come shortly thereafter.

"On August 19th the Small Business Administration contacted the bank indicating that in its opinion Hagen needed $85,000.00 to complete the contemplated improvements, and inquired of the bank if it wished to participate in this new loan figure to the extent of 10% thereof. The bank directors agreed to this increase in the loan and so notified the Small Business Administration.

"On August 24th the Small Business Administration approved the loan in the amount of $85,000.00 and advised the bank thereof. At that time it also informed the bank not to act on said matter until written authorization was received and the Small Business Administration forwarded the necessary documents. They were received by the bank on September 10th or 11th.

"The documents and forms were turned over to the bank's attorney, G. P. Gannon, who was also a member of the board of directors, for processing and completion on September 13th.

"The snow-making equipment arrived C.O.D. early in September, and was held in storage. The engineers arrived in September to supervise the installation, but because of its being tied up in storage and later commitments, the engineers left without making the installation.

"The bank completed the documents on October 8th, and forwarded them to the Small Business Administration on that date. The Small Business Administration sent its check which was received and disbursed by the bank on October 20th. The snow-making equipment was released at that time.

"Plaintiff contends he was unable to install the equipment properly for the 1965–66 skiing season and that he suffered great financial loss by reason thereof. . . .

" . . .

"The defendant has undoubtedly properly stated the distinction between a demurrer and a motion for summary judgment when it says a demurrer raises the question as to whether the complaint sets forth a cause of action while a motion for summary judgment assumes a cause of action is alleged but raises the question as to whether the plaintiff has sufficient facts to prove or at least create an issue of fact as to his cause of action.

"It further correctly states the law to be that the ultimate question for the court to decide on a motion for summary judgment is whether there is any issue of fact to be tried in the case. *Voysey v. Labisky* (1960), 10 Wis. 2d 274, 103 N. W. 2d 9.

"The technique by which the trial court is to approach the problem is set forth as follows:

" '. . . we first examine the moving papers and documents to determine whether the moving party has made a *prima facie* case for summary judgment under sec. 270.635 (2), Stats., and if he has, we then examine the opposing party's affidavits and other proof to determine whether facts are shown which the court deems sufficient to entitle the opposing party to a trial. If the material facts are not in dispute and the inferences which may reasonably be drawn from the facts are not doubtful and lead only to one conclusion, then only a matter of law is

presented which should be decided upon the motion.'
*Leszczynski v. Sturges* (1965), 30 Wis. 2d 534, 538, 141
N. W. 2d 261.

"It now becomes necessary for the court to examine
the affidavits and other proofs of evidentiary facts pro-
duced by each of the parties in support of their respective
positions.

"Defendant has supplied the affidavits of Marshall T.
Brekke, G. P. Gannon, Elmer J. Einum, Francis B.
Schneider, Clarence A. Sims, Warren D. Leary, Jr., Ed-
ward J. Doyle and Alfred Sockness, who were all of the
officers and directors of the defendant bank at the time
these transactions were transpiring, and also Edward J.
Coe, their attorney in this action.

"Each and every one of the directors and officers of
the bank allege specifically that he at no time between
January 1, 1965, and October 20, 1965, made any com-
ments, statements, promises, commitments or representa-
tions to Casper Hagen, or anyone else, as to when the
defendant would make a loan to the plaintiffs, and if
made, when it would be processed, closed or disbursed,
and that he, at no time, told, advised or represented that
a loan would be made to plaintiffs in time so they could
purchase or install any equipment or improvements in
time for use during the 1965–66 ski season.

"In his affidavit in opposition to the motion for sum-
mary judgment, Casper Hagen states the foregoing state-
ments are not true, and that during the summer and
fall of 1965 he had many conversations with Elmer J.
Einum concerning the loan for snow-making equipment
and T-bar lifts and that he had to have the equipment
early in September, so that he would have time to install
the snow-making equipment in order to make snow as
soon as possible for the 1965–66 ski season. He said
Mr. Einum assured him more than once that there was
nothing to worry about and that at the very latest the
loan proceeds would be available about the middle of
September.

"Defendant points out that in an adverse examination
taken of Mr. Hagen on September 19, 1967, he could not
remember any promises being made to him by anyone;
that he didn't remember what contacts he had with bank
officials between June 17th and August 19th; that the
first time he conferred with bank officials after August
19th was about September 25th; that he did not re-

member what they talked about; that he couldn't say if any bank official promised him the loan proceeds by a particular date; that he couldn't remember which official or officials he told he had to have the equipment by a certain date; that he didn't know if such a promise was ever made. Defendant contends these answers establish beyond a doubt that plaintiffs have no evidentiary proofs sufficient to establish a *prima facie* case.

"Plaintiff explains these apparent contradictions between his adverse examination and his affidavit opposing summary judgment by saying at the adverse examination defendant's counsel was asking for specific dates and statements, and that he could not recall them with that exactness.

"Whatever the reason for these discrepancies in Mr. Hagen's statements, the court cannot, on a motion for summary judgment, accept only one version and ignore the other. Matters of credibility of witnesses are not to be determined upon a motion for summary judgment. Credibility is to be determined at a trial.

"The deposition of Mr. Francis R. Parks, who was Mr. Hagen's attorney during the loan negotiations, states he did not ever remember of Mr. Einum's calling him, but that he called Mr. Einum several times at Mr. Hagen's request to see what was happening.

"Mr. G. P. Gannon, director and attorney for the bank during the loan negotiations, stated he called Mr. Hagen several times between September 13th and October 8th to have him bring information to his office to enable Mr. Gannon to complete the loan documents. He stated that Mr. Hagen came to his office several times, found Mr. Gannon busy and left. He also stated he went to Mr. Park's office for necessary corporate records, but found him out of the office. He stated he requested a record of corporate authority to borrow the money, but he didn't get it until September 30th. He said he made several requests for an itemized list of personal property to be described in the security agreement, but didn't get this list until October 5th.

"In his affidavit Mr. Hagen stated Mr. Gannon never called him asking for information, and that he never received a phone call of any kind from Gannon. He said he did go to Gannon's office several times to see how the loan was coming, but he was always busy and couldn't get to see him. He stated that he supplied the corporate

authority to borrow as soon as it was requested, and that Gannon never asked for a list of the personal property to be described in the security agreement until early in October.

"Ruth Hagen, wife of Casper Hagen, and Peder Orsund, manager of Hardscrabble Ski Area for 15 years, each said that never at any time during this period did Casper Hagen ever receive a phone call from Mr. Einum or Mr. Gannon, to their knowledge, and that they customarily answered the business phones.

"In their affidavits both Mr. Einum and Mr. Gannon stated the reason for the delay in securing the loan proceeds was Mr. Hagen's failure to cooperate with them.

"In his affidavit Mr. Hagen stated he talked to Mr. Einum sometime after September 9th, and Mr. Einum told him the Small Business Administration papers had been on Mr. Gannon's desk for three weeks and he had not looked at them.

"Thomas Beal, manager of Briggs Transportation office where the snow-making equipment was being held C.O.D., said he went to Mr. Einum in the middle of September to see about getting the equipment out of the warehouse, and was told that 'all Cap Hagen has to do to get the stuff released is to come down here and sign a couple of papers at the bank.'

"There are other statements and proofs in the record, but the foregoing are sufficient to demonstrate there are issues of fact sharply in dispute between the parties to this action.

"The defendant further contends that some of plaintiff's statements are general denials and conclusions and are not sufficient to defeat evidentiary facts on a motion for summary judgment, citing *Lathan v. Journal Company* (1966), 30 Wis. 2d 146, 140 N. W. 2d 417. While this is a correct statement of the law, it does not mean a denial that a specific act occurred is a general denial or conclusion. A denial that a phone call ever took place is not a general denial or conclusion. Other than by a specific denial, there may be no other way to raise issue that something didn't happen.

"The defendant contends the plaintiffs have failed to show any contract was entered into; that there was no consideration for any contract; and that in fact no contract resulted from this transaction for which plaintiffs can now claim a breach.

"Although no authority in Wisconsin was cited, and the court has not been able to locate any, it appears to be the rule that a bank may sustain liability as a result of a failure to lend money in accordance with a contract into which it has entered. 7 Am. Jur., *Banks,* sec. 646.

" 'An action against a bank for breaking its contract to lend money and requiring the applicant to remove his account from the bank sounds in contract, not in tort.' *Farabee-Treatwell Co. v. Union & P. Bank & T. Co.,* 135 Tenn. 208, 186 S. W. 92, 10 Am. Jur. 2d, *Banks,* sec. 683.

"While a contract requires an offer, an acceptance and consideration, it is possible for a change of financial position to the borrower's disadvantage to constitute a consideration for a contract, if this situation is fully known to the lender. Consideration may consist of a detriment to the promisee or a benefit to the promisor. *Home Savings Bank v. Gertenbach* (1954), 270 Wis. 386, 71 N. W. 2d 347.

"It seems clear that the bank could have withdrawn from these negotiations on August 19th when the proposed loan was increased to $85,000.00 and its participation was increased to $8,500.00, but it chose not to do so. It is for the jury to determine if these parties, in fact, entered into a contract.

"The plaintiffs have alleged a cause of action in negligence in processing the loan after the bank had received all the necessary papers and closing documents from the Small Business Administration. The court does not construe this to be an allegation of a tort action. A contract may be breached through negligence as well as in any other manner.

"The defendant has asked the court to rule that in view of the complexity involved in the processing of this loan a period of 28 days is not so unreasonable as a matter of law as to constitute negligence on the part of the bank in processing the loan. This the court will not do. Whether this loan was processed as expeditiously as the circumstances would require is a matter to be determined by the jury.

" . . .

"This court must follow the rules governing summary judgments as set forth in *Peterson v. Maul* (1966), 32 Wis. 2d 374, 376, 145 N. W. 2d 699:

" ' . . . Without citation of authority it can be stated that summary judgment is a drastic remedy and should not be granted if any material facts are in dispute or if the inferences which may reasonably be drawn from the facts are doubtful. It is only when the facts or the reasonable inferences drawn therefrom lead only to one conclusion as to each necessary ultimate fact that it can be said that only a matter of law is presented which should be decided upon a motion for summary judgment. That material evidentiary facts must appear with certainty; the court cannot act as a trier of disputed facts on a motion for summary judgment; it cannot pass upon the weight and credibility of disputed facts or doubtful inferences as they appear from the affidavit, other documents or pleadings.'

"The court cannot say there are no material facts in dispute, it cannot try disputed facts on a motion for summary judgment, nor can it pass upon the weight and credibility of disputed facts. All of these things obtain in the instant case."

From the foregoing it is readily apparent that the trial court gave thorough and extensive consideration to the motion for summary judgment. There has been no satisfactory showing that the trial court abused its discretion in concluding the case should be tried.

The defendant contends that, in any event, the motion should be granted to the extent that the complaint be dismissed as to Casper Hagen individually because the transactions were the acts of the corporation and not Hagen.

We must reject this contention for two reasons. First, this contention was not raised in the trial court and will not be considered here as an original issue. Second, the affidavits reveal that Hagen was required to sign the security documents individually as well as in his capacity as a corporate officer. He does have a legally recognizable personal interest.

*By the Court.*—Order affirmed.