Nancy E. PUM and Frank W. Pum,
Plaintiffs-Appellants,†

v.

WISCONSIN PHYSICIANS SERVICE INSURANCE
CORPORATION, Starr Insurance Group, Ltd. and
Mark E. Edwards, Defendants-Respondents.†

Court of Appeals

*No. 2005AP3049. Submitted on briefs October 3, 2006.
—Decided December 27, 2006.*

2007 WI App 10

(Also reported in 727 N.W.2d 346.)

† Petition to review filed.

501

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Andrew J. Schwaba* and *Hope K. Olson* of *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Christine M. Witherill* of *WI Physicians Service Insurance Corp.* of Madison for *Wisconsin Physicians Service Insurance Corporation* and *Mark S. Nelson* and *Heather A. Lutzke* of *Nelson, Connell & Conrad, S.C.* of *Brookfield* for *Starr Insurance Group, Ltd.* and *Mark E. Edwards*.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J. Plaintiffs-Appellants Nancy E.

and Frank W. Pum appeal from a summary judgment dismissing their complaint against Wisconsin Physicians Service Insurance Corporation (WPS), Starr Insurance Group, Ltd. and Mark E. Edwards. After the Pums incurred approximately $317,000 in medical bills, WPS rescinded the health insurance contract with them claiming a right to do so under WIS. STAT. § 631.11(1)(b) (2003–04).[1] The Pums sued WPS, asserting claims of breach of contract and bad faith, both of which the complaint demonstrates are based on the claim that WPS had no right to rescind the contract. The trial court granted summary judgment to WPS, concluding that Mrs. Pum knew, or should have known, that her answers to two questions on the insurance application were a misrepresentation. The trial court found that the answers were false, that the misrepresentation was material, and that WPS relied on the answer. The trial court also found that WPS had properly applied its own underwriting guidelines and concluded that the misrepresentation was material under those guidelines because WPS would not have issued the policy if Mrs. Pum's "abdominal problems" had been disclosed. Based on the above, the trial court concluded that under § 631.11(1)(b), WPS had the right to rescind the contract. The trial court also dismissed the Pums' bad faith claim against WPS, holding that "the sole reason for denial of Plaintiffs' claims was WPS rescinded the contract, thus there is no breach of contract and the Court has found rescission was sustained by the application of the law to the undisputed facts, so there is no bad faith claim." We conclude that there are sufficient disputed facts and inferences therefrom to preclude granting summary judgment.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 2. The trial court held that the Pums would only be entitled to the amount WPS would have paid on the insurance contract it rescinded, if that contract had been in effect. The trial court granted summary judgment to WPS as to damages because the Pums had no expert contract administrator to analyze and apply: (1) the WPS contract with the Pums; and (2) the "other discounts"[2] available to WPS. Because we conclude that the trial court incorrectly described the measure of damages in a case based on wrongful rescission of a contract, we also reverse the grant of summary judgment on this issue.

¶ 3. The trial court held that Wis. Stat. § 631.11(4)(a) bars Mrs. Pum from relying on disclosures she made to Edwards, even if he was an agent of WPS, because the statute prohibits imputing knowledge to WPS if the insurance applicant completed the application in her own writing as Mrs. Pum did. We conclude that the trial court misapplied the statute; consequently, we reverse and remand for trial the negligence claim against both Edwards and his employer, Starr.

### BACKGROUND

¶ 4. Nancy and Frank Pum had health insurance, but in September 2002, wanted to find a more economical policy. Defendant Mark Edwards, who worked with Starr Insurance Group, provided the Pums with infor-

---

[2] It is apparent the trial court is referring to negotiated and contracted discounts WPS has with various health care providers which set specific rates for specific procedures. These "other discounts" have been the subject of discussion by our supreme court in *Koffman v. Leichtfuss*, 2001 WI 111, ¶ 21, 246 Wis. 2d 31, 630 N.W.2d 201.

mation about several policies, including those provided by defendant WPS. Mrs. Pum testified that she had a telephone conversation with Edwards during which he asked her a number of health-related questions. In that conversation, she testified that she disclosed seeing her doctor "in the summer" for a pulled muscle and a summer virus. Edwards met with the Pums the next day, September 18, 2002, and left a WPS application for health insurance which he said he would pick up when Mrs. Pum had completed it. Mrs. Pum filled out the WPS insurance application that day. Edwards returned the next day, September 19, 2002, to collect the WPS insurance application. While there, Edwards filled in some additional information on the application and received a premium check from the Pums. WPS advised the Pums that the policy was issued, effective October 1, 2002. The Pums allowed their existing health insurance to expire. On December 20, 2002, Mrs. Pum was hospitalized and remained hospitalized through January 30, 2003, part of which was in intensive care, for serious medical problems involving pancreatitis and gallbladder surgery. On January 3, 2003, she had surgery for a pelvic abscess with post-operative infection. From April 14, 2003, until April 22, 2003, Mrs. Pum was re-hospitalized for recurrent pelvic abscesses. She incurred bills for medical care and treatment in excess of $310,000. On May 12, 2003, WPS notified the Pums that it was rescinding the policy, asserting that Mrs. Pum had made false representations in answers to two specific questions on the insurance application. The disputed questions and answers are:

> 7.C. Have you or any dependent applying for coverage been diagnosed, treated, or sought a medical opinion for any of the following in the past ten years (circle disease or disorder):

505

. . . .

4. Kidney stones; disease of kidney, ureter or bladder, intestine or stomach?

[And Pum placed a "√" in the "no" box on the form.]

7.D. Have you or any dependent applying for coverage:

. . . .

2. Had an injury, illness, medical attention, diagnosis, or treatment during the past five years for any reason not already mentioned? (except AIDS, ARC and genetic testing results)

[And Pum placed a "√" in the "no" box on the form.]

¶ 5. WPS refused to pay any portion of the expenses Mrs. Pum incurred for medical care and treatment. The Pums sued WPS for breach of contract and bad faith based on the WPS rescission and sued Edwards and Starr based on claims of negligence. Additional facts, as necessary, are provided in the body of the opinion.

## STANDARD OF REVIEW

¶ 6. In reviewing the grant or denial of a summary judgment, we apply the same methodology as the trial court and review *de novo* the grant or denial of summary judgment. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Summary judgment is proper if there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). In evaluating the evidence, we draw all reasonable inferences from the

evidence in the light most favorable to the non-moving party. *Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473 (1980). Whether an inference is reasonable and whether more than one reasonable inference may be drawn are questions of law. *Burbank Grease Servs., LLC v. Sokolowski*, 2005 WI App 28, ¶ 10, 278 Wis. 2d 698, 693 N.W.2d 89, *rev'd in part on other grounds*, 2006 WI 103, 294 Wis. 2d 274, 717 N.W.2d 781; *Hennekens v. Hoerl*, 160 Wis. 2d 144, 162, 465 N.W.2d 812 (1991). Doubts as to the existence of a genuine issue of material fact should be resolved against the party moving for summary judgment, and the inferences to be drawn from the underlying facts should be viewed in the light most favorable to the party opposing the motion. *Grams*, 97 Wis. 2d at 338–39; *Coleman v. Outboard Marine Corp.*, 92 Wis. 2d 565, 571, 285 N.W.2d 631 (1979).

¶ 7. When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation, but as part of a whole, in relation to the language of surrounding or closely related statutes, and reasonably so as to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48; *Lenticular Europe, LLC ex rel. Van Leeuwen v. Cunnally*, 2005 WI App 33, ¶ 10, 279 Wis. 2d 385, 693 N.W.2d 302.

¶ 8. The legislature has established numerous requirements for insurance contracts. Misrepresentation by an insurance applicant, which permits rescinding the insurance contract, is limited by WIS. STAT. § 631.11(1)(b), which provides:

> (b) *Misrepresentation or breach of affirmative warranty.* *No misrepresentation* . . . that is made by a person other than the insurer or an agent of the insurer in the negotiation for or procurement of an insurance contract *constitutes grounds for rescission* of, or affects the insurer's obligations under, the policy *unless, if a misrepresentation, the person knew or should have known that the representation was false, and unless any of the following applies:*
>
> 1. *The insurer relies on the misrepresentation* or affirmative warranty *and the misrepresentation* or affirmative warranty *is either material or made with intent to deceive.*
>
> 2. *The fact misrepresented* or falsely warranted *contributes to the loss.*

Section 631.11(1)(b) (emphasis added).

██

¶ 9. To be entitled under the statute to rescind an insurance policy, the insurance company must prove: (1) that (a) a misrepresentation was made *and* (b) the person making it knew, or should have known, that it was false; *and* (2) either (a)(i) the insurer relied on the misrepresentation, and (ii) that misrepresentation was material, or (iii) it was made with intent to deceive; *or* (b) the misrepresented fact contributed to the loss. *Id.* Failure to prove the first element defeats the right to rescind. *Id.* Conversely, proof of the first element, and proof of either of the alternatives in the second element, allow the company to rescind the

contract. *Id.* If there are disputed material facts as to any of these elements, or if differing inferences as to these elements can be drawn from undisputed facts, WPS is not entitled to summary judgment. *See Grams,* 97 Wis. 2d at 339 (holding all reasonable inferences must be drawn in favor of the non-moving party). Hence, we must examine the facts to determine whether WPS is entitled to summary judgment on any combination of statutory requirements sufficient to allow it to rescind the contract.

¶ 10. WISCONSIN STAT. § 631.11(4) describes the limitation on the knowledge in the possession of an agent that might otherwise be imputed to the insurance company:

> No misrepresentation made by or on behalf of a policyholder and no breach of an affirmative warranty or failure of a condition constitutes grounds for rescission of, or affects an insurer's obligations under, an insurance policy if at the time the policy is issued the insurer has either constructive knowledge of the facts under s. 631.09 (1)[3] or actual knowledge. *If the application is in the handwriting of the applicant, the insurer does not have constructive knowledge under s. 631.09 (1) merely because of the agent's knowledge.*

Section 631.11(4) (footnote and emphasis added).

---

[3] WISCONSIN STAT. § 631.09 states in pertinent part:

> **Knowledge and acts of agents. (1)** IMPUTATION OF KNOWLEDGE. An insurer is deemed to know any fact material to the risk or which breaches a condition of the policy, if the agent who bound the insurer or issued the policy or transmitted the application to the insurer knew it at the time the agent acted, or if thereafter any of the insurer's agents with whom the policyholder is then dealing as agent of the insurer learns it in the course of the agent's dealing with the policyholder, and knows that it pertains to a policy written by the insurer.

## I. Rescission of the contract

■

¶ 11. Wisconsin Stat. § 631.11(1)(b) establishes the elements necessary to entitle an insurance company to rescind an insurance contract. First, there must be an affirmative warranty or "misrepresentation." Sec. 631.11(1)(b). A misrepresentation is also referred to in the statute as a false representation. *Id.* Whether the statement is a misrepresentation or an affirmative warranty is a question of law. *See* Wis JI—Civil 3100, cmt. ("Generally, the determination as to whether a statement is a representation or affirmative warranty is a matter of law to be determined by the trial judge."). The trial court implicitly concluded that the answers to questions on the insurance applications were representations. We agree.

■

¶ 12. However, whether the statement was false, and whether the person making the statement knew, or should have known, that the statement was false, are questions of fact for the jury. *See* Wis JI—Civil 3100.[4] The first element of Wis. Stat. § 631.11(1)(b) does not require proof of "intent to deceive"; proof of that intent arises only if the insurance company proves that it relied on the statement but does not prove the statement was material. *See* § 631.11(1)(b)1.

■

¶ 13. The burden of proof on an insurance company seeking to rescind an insurance contract is the middle burden, that is, clear and convincing evidence as

---

[4] "The first question in the verdict calls upon you, the jury, to determine whether the statement made ... was false." "[T]he second question calls upon you to determine if [the person making the statement] knew or should have known that the representation was false."

to each element of the statute. Wis JI—Civil 3100, cmt.;[5] *Lundin v. Shimanski*, 124 Wis. 2d 175, 184, 368 N.W.2d 676 (1985) ("[T]he party alleging the fraud has the burden of proving the elements by clear and convincing evidence.").

¶ 14. Mrs. Pum testified that she answered question 7.C.4. "no" because her understanding was: "I had no disease, I had no disorder, I had no condition." She also testified that she believed that question 7.D.2. did not require information about her three visits over the summer with various abdominal complaints, because she understood the questions to also inquire about "a condition, a disease, [or] a disorder." Questions on insurance applications are to be understood and answered from a layman's point of view and understanding. *Fuchs v. Old Line Life Ins. Co.*, 46 Wis. 2d 67, 72, 174 N.W.2d 273 (1970). Inquiry in an application as to whether the applicant was "free of any sickness or physical impairment," is examined in the context which the term is used and calls for a layman's answer, not a medical opinion. *Id.* at 70. In addition, the terms in an insurance contract must be given their popular meaning. *Id.* at 72. When analyzing the terms "disease," "disorder" or "condition," if a jury believed Mrs. Pum, it could conclude that she knew of no such factors because the term "disease"[6] implies something medical which

---

[5] Wisconsin JI—Civil 3100, cmt., notes that "[t]he burden of proof as to all questions covered by the instruction is upon the insurance company and is the middle burden."

[6] "Disease" has been defined as "**1.** a pathological condition of a part, an organ, or a system of an organism resulting from various causes, such as infection, genetic defect, or environmental stress, and characterized by an identifiable group of signs or

has been identified that can be treated, a "disorder"[7] suggests some sort of permanent abnormal medical circumstance, and "condition"[8] suggests an abnormal or diseased part of the body. A jury could conclude that, from Mrs. Pum's perspective, none of these applied to her.

¶ 15. In addition, Mrs. Pum's treating physicians averred that Mrs. Pum would have had no reason to know, when she completed the WPS insurance application in September 2002, about her subsequent illnesses which were diagnosed in December 2002. Her primary care doctor, Dr. Jeffrey Sabatino, stated in an affidavit that he never diagnosed possible gallbladder problems or pancreatitis before December 16, 2002, so that, prior to that time, Mrs. Pum did not have a reason to know she had either of those medical conditions. Dr. Thomas A. Taft,[9] who treated Mrs. Pum for cholecystitis, gallbladder pancreatitis and peptic ulcer, and Dr. Lauren S.

---

symptoms." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 532–33 (3d ed. 1992).

[7] "Disorder" has been defined as "**3.** an ailment that affects the function of mind or body: *eating disorders and substance abuse.*" *Id.* at 536 (emphasis in original).

[8] "Condition" has been defined as "**2.a.** a state of health **b.** a state of readiness or physical fitness . . . **3.** a disease or physical ailment: *a heart condition.*" *Id.* at 393 (emphasis in original).

[9] Dr. Taft stated:

> The records from Dr. Sabatino's office do not indicate that Mrs. Pum was ever told that she had peptic ulcer disease. Dr. Sabatino never administered any care to Mrs. Pum for peptic ulcer disease. Dr Sabatino's notes indicate that Mrs. Pum was being evaluated for abdominal discomfort . . . . These symptoms would not be expected to be associated with an acute cholecystitis or cholecystitis of any type. Therefore, the symptoms with which Mrs. Pum presented to Dr. Sabatino prior to December 16, 2002, in no way contributed to symptoms and the condition of gallstone

Lopez,[10] who treated Mrs. Pum for septic shock due to the cholecystitis, gallbladder pancreatitis and peptic ulcer, each of whom cared for Mrs. Pum after December 16, 2002, confirmed that, in their medical opinions, Mrs. Pum would have had no reason to know about her cholecystitis, gallbladder, pancreatitis or peptic ulcer conditions before December 16, 2002. WPS argued, on the other hand, and the trial court found, that, contrary to Mrs. Pum's testimony, Mrs. Pum knew, or should have known, that failure to disclose the three visits to her doctor in July and August was a misrepresentation. While a medical diagnostic opinion is not required in answer to insurance applications, *see Fuchs*, 46 Wis. 2d at 72, a jury could conclude, if it believes Mrs. Pum and her treating physicians,[11] that Mrs. Pum did not know,

---

pancreatitis, peptic ulcer disease and associated complications beginning on December 16, 2002.

. . . .

Based on the medical care provided by Dr. Sabatino and the symptoms expressed by Mrs. Pum, no patient, specifically Mrs. Pum, would ever have known that she had a problem with potential duodenal ulcer. In addition, Mrs. Pum was never told that she ever had a problem with cholecystitis or gallstones.

[10] Dr. Lopez stated that after review of Mrs. Pum's medical records:

Mrs. Pum had no way of knowing, given her medical care up to the point of her insurance policy application, that she could possibly have gallstones or acute cholecystitis or complications from acute cholecystitis at the time of the application.

[11] We do not consider the physicians' affidavits as relevant to whether Mrs. Pum was a truthful person. We agree with the trial court that one witness may not vouch for the truthfulness of another. However, Wis. Stat. §§ 907.02 and 907.04 permit a medical expert to express an opinion as to why, based on records reviewed, a layman should or should not have known she suffered from precursors, if they were, to a series of complex medical problems.

513

or have reason to know, of a medical condition that manifested as the illnesses diagnosed in December 2002.

¶ 16. Credibility of witnesses is not a determination to be made at the summary judgment stage. *See Yahnke v. Carson*, 2000 WI 74, ¶ 11, 236 Wis. 2d 257, 613 N.W.2d 102 ("[A] circuit court does not decide issues of credibility on summary judgment."). While it may be that a particular witness turns out to be an unbelievable witness, it is not appropriate to weigh witness credibility on a motion for summary judgment. *See Pomplun v. Rockwell Int'l Corp.*, 203 Wis. 2d 303, 306–07, 552 N.W.2d 632 (Ct. App. 1996). If alternative inferences to be drawn from particular facts depend on the credibility of the witness asserting either the fact or the inference, summary judgment is not appropriate. *See Hardscrabble Ski Area, Inc. v. First Nat'l Bank of Rice Lake*, 42 Wis. 2d 334, 342, 166 N.W.2d 191 (1969), *superseded by statute on other grounds as stated in Wright v. Hasley*, 86 Wis. 2d 572, 273 N.W.2d 319 (1979). Based on the depositions and affidavits in the record, there are genuine issues of material fact that require resolution at trial by a factfinder.

### (a) Reliance on the representation

¶ 17. To establish its right to rescind the contract, WPS must prove that it actually relied on the misrepresentation and that either the misrepresentation was material or that it was made with intent to deceive. *See* WIS. STAT. § 631.11(1)(b)1. WPS claims that it relied on the lack of information about Mrs. Pum's three visits to her primary care doctor in July and August because, it asserts, it would not have issued the policy when it did if it had known about those three visits. The Pums argue WPS did not rely on the missing information because

WPS granted the policy without following its own underwriting procedure which would have promptly produced the disputed information. The underwriting guidelines direct that "[i]f an individual is over 50 years old and has seen a doctor in the last 3 months, order medical records no matter what the health condition." It is undisputed that WPS did not obtain Mrs. Pum's medical records before issuing the policy. Essentially, the Pums argue that WPS had a policy, evidenced by the guidelines, of verifying medical information in all applications from people over fifty who had visited a doctor "in the last 3 months," and that by not following their own underwriting guidelines, WPS assumed the risks of the information that following those guidelines would have disclosed. WPS responds that it properly applied its guidelines because the underwriter interpreted the application, which disclosed a visit in "June, 2002,"[12] as not disclosing a visit within three months from the date the application was signed on September 19, 2002. By counting the month in which the visit occurred, although having no information as to whether the visit was at the beginning or end of June, the underwriter concluded that medical records were not required because June, July and August were the relevant three months.

¶ 18. WISCONSIN ADMIN. CODE § INS 3.28(5)(c)[13] limits an insurance company's ability to void coverage on the basis of misrepresentation if it has not duly considered material which it would have obtained through

[12] The application discloses only "6/02" as the date.

[13] WISCONSIN ADMIN. CODE § INS 3.28(5)(c) provides:

(c) *An insurer* which issues coverage for a person *shall not* use the statements, information or material set out in subds. 1., 2. and 3. to *void the coverage on the basis of misrepresentation* in the application, or deny a claim on the basis of a pre-existing condition defense, *unless the insurer has:*

reasonable inquiry based upon the information in the application. A jury could conclude that because WPS did not obtain any of Mrs. Pum's medical records until after it issued the policy, it did not follow its underwriting guidelines for issuing the policy. This conduct is relevant to whether the missing information was material, was actually relied on by WPS, or contributed to the loss; how persuasive it is remains for the jury. A jury could also conclude that the standard required by the Wisconsin Administrative Code for voiding a policy had not been met by WPS in this case based on the manner in which it handled the underwriting. Sec. INS 3.28(5)(c).

### (b) Materiality of the representation

¶ 19. "An insurer must show materiality in order to avoid coverage because of misrepresentation." *Northwestern Nat'l Ins. Co. v. Nemetz*, 135 Wis. 2d 245, 262, 400 N.W.2d 33 (Ct. App. 1986) (citations omitted). "A misrepresentation is not material if it did not invoke the insurer's reliance." *Id.* (citation omitted). "The materiality of a misrepresentation is a question of fact that must be presented to the jury." *Id.* (citing *Nolden v.*

---

1. Resolved patently conflicting or incomplete statements in the application for the coverage;

2. Duly considered information furnished to it:

a. In connection with the processing of such application, or

b. In connection with individual coverage on the person previously issued by it and currently in force, or

3. *Duly considered the material which it would have obtained through reasonable inquiry following due consideration of the statements or information.*

(Emphasis added.)

*Mutual Benefit Life Ins. Co.*, 80 Wis. 2d 353, 360, 259 N.W.2d 75 (1977)). A material fact is "[a] fact that is significant or essential to the issue or matter at hand." BLACK'S LAW DICTIONARY (8th ed. 2004), *available at* www.westlaw.com.

¶ 20. Viewing the facts and inferences therefrom most favorably to the Pums, a jury could determine that, from the perspective of WPS at the time of the application, Mrs. Pum's recent medical history was not sufficiently significant or essential to warrant obtaining easily available medical records, and therefore was not material.

**II. Bad faith**

¶ 21. The trial court granted summary judgment dismissing the bad faith claim because it concluded that WPS was entitled to rescind the contract, which meant there was no contract. Because the trial court determined that there was no contract, it concluded that there could be no cause of action for bad faith based on breach of contract.

¶ 22. The tort of bad faith is a separate intentional wrong which results from breach of a duty imposed by a contractual relationship. *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 687, 271 N.W.2d 368 (1978). It is not a tortious breach of contract. *Id.* To recover on a claim for bad faith, a plaintiff must prove "the absence of a reasonable basis for denying benefits" and the insurance company's "knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.* at 691. If the duty to pay is "fairly debatable"; that is, if the company has investigated and developed the facts necessary to evaluate the claim, and has not recklessly ignored or disregarded the facts

necessary to evaluate the claim, the company is entitled to argue that its decision to deny benefits is fairly debatable. *Id.* However, if the company knowingly fails "to exercise an honest and informed judgment," such failure "constitutes the tort of bad faith." *Id.* at 692.

¶ 23. The trial court granted summary judgment holding, as a matter of law, that WPS had a right to rescind. We have remanded for trial the claim that WPS wrongfully rescinded the contract, which removes the trial court's rationale for dismissing the bad faith claim. Consequently, we also reverse and remand the bad faith claim.

### III. Damages

¶ 24. If a jury concludes that WPS was not entitled to rescind the contract, it will be required to determine the damages the Pums have sustained. WPS devotes considerable space in its brief to its argument that the Pums' damages are limited to what WPS would have paid if the contract it rescinded had been in effect. It cites no cases which support the proposition that a party who wrongfully rescinds a contract is nonetheless entitled to limit the wronged party to damages under the contract that has been rescinded.

¶ 25. Where a party to a contract wrongfully rescinds a contract, damages for wrongful rescission are those damages which the wronged party sustains because of the rescission. *Schnuth v. Harrison*, 44 Wis. 2d 326, 339, 171 N.W.2d 370 (1969). The wronged party must be returned to the status he or she held before the rescinded contract came into existence:

> The effect of a rescission of a contract is to restore the parties to the position they would have occupied had no contract ever been made.

. . . .

> All these items [of damage] were aimed at making the plaintiff whole and were properly awarded as items of damage needed to place him in the same position he was in before the contract.

*See id.* (footnote omitted); *see also Maslow Cooperage Corp. v. Weeks Pickle Co.*, 270 Wis. 179, 190, 70 N.W.2d 577 (1955) ("A party who wishes to rescind an agreement must place the opposite party in status quo.").

■

¶ 26. We hold that the Pums are not limited in their damage claim to what WPS would have paid under the rescinded contract. Nor is it reasonable to require a plaintiff to discover and interpret undisclosed contracts or agreements between WPS and health care providers which give WPS "discounts" not available to an uninsured party. Such information is in the exclusive possession of WPS and is the product of the bargaining between WPS and the provider. *See Koffman v. Leichtfuss*, 2001 WI 111, ¶ 21, 246 Wis. 2d 31, 630 N.W.2d 201:

> The modern health care system employs a myriad of health care finance arrangements. As part of the system, negotiated and contracted discounts between health care providers and insurers are increasingly prevalent. Pursuant to these agreements, an insurer's liability for the medical expenses billed to its insured is often satisfied at discounted rates, with the remainder being "written-off" by the health care provider.

Discounts WPS might have obtained had it honored its contract with the Pums are not relevant to the damages the Pums sustained because WPS rescinded that contract. The Pums are entitled to be returned to the status quo before the contract existed if WPS is found to have wrongfully rescinded the contract.

## IV. Negligence of Edwards and Starr

¶ 27. Mrs. Pum testified that before she applied for insurance with WPS, she did, in fact, disclose to Edwards her last three visits to her doctor in the previous three months. She described a telephone conversation she had with Edwards the day before he met with her in person and delivered the application form. If the jury believes Mrs. Pum's testimony, it could conclude that she did disclose the disputed visits to a person who appeared to her to represent the insurance company. The statute upon which Edwards relies in his defense only involves imputing knowledge to the insurance company. It does not resolve any duty Edwards may have owed to Mrs. Pum. *See* WIS. STAT. § 631.11(4) ("If the application is in the handwriting of the applicant, the insurer does not have constructive knowledge under s. 631.09 (1)[14] merely because of the agent's knowledge.") (footnote added). We conclude that the trial court misapplied the statute, consequently, we reverse and remand for trial the negligence claim.

¶ 28. The Pums must show that Edwards owed a duty to them, that he breached the duty, and that the breach caused their damage. *See Nelson v. Davidson*, 155 Wis. 2d 674, 679, 456 N.W.2d 343 (1990). If there was a basis upon which to find that Edwards was negligent because he failed to disclose Mrs. Pum's three doctor visits to WPS, then Mrs. Pum still must establish what damages she sustained as to which Edwards' negligence was a cause.

---

[14] *See supra* note 3.

¶ 29. The complaint does not assert that Starr had a duty to the Pums other than as Edwards' employer. However, because we have reversed dismissal as to Edwards, we likewise reverse dismissal as to Starr because there is no claim that Edwards acted in any capacity other than as an employee of Starr.

## CONCLUSION

¶ 30. Having in mind that WPS must establish by clear and convincing evidence[15] each element on which it relies to rescind the contract, we conclude that although it is undisputed that Mrs. Pum did not specifically disclose on the application her three doctor visits in the preceding summer, there are facts in the record from which a jury could infer that Mrs. Pum did not know, or should not have known, that her failure to specifically mention those three visits was a misrepresentation of the requested information. There are also facts in the record from which the jury could infer that the failure to disclose the three doctor visits was not relied on by WPS, was not material to its decision to issue the policy and did not contribute to the loss it sustained from Mrs. Pum's subsequent gallbladder surgery and related medical conditions.[16] We reverse the grant of summary judgment in favor of WPS as to all issues.

---

[15] We are not suggesting that either party will prevail at trial. We are concluding only that there are facts in the record which support inferences favorable to the Pums, thus making summary judgment in favor of WPS inappropriate.

[16] WPS did not attempt to prove that Mrs. Pum intended to deceive when she failed to disclose the three doctor visits on the insurance application. Intent to deceive is not a mandatory element under Wis. Stat. § 631.11(b)(1), but rather, an alternative to proof of materiality. The trial court made no finding on

*By the Court.*—Judgment reversed and cause remanded.

this issue, hence we do not address it. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed).