KELLY, Circuit Judge.
Douglas Weiher appeals the district court’s grant of summary judgment allowing Northwestern Mutual Life Insurance Company (Northwestern) to rescind a disability insurance policy. Because we conclude Northwestern was not entitled to summary judgment, we reverse and remand.[1]
I. Background
Weiher lived in Minnesota and practiced dentistry in Wisconsin. In 2009, he owned two disability insurance policies: a Unum group disability policy, and a Great-West Life and Annuity Company (Great-West) policy. On May 4, 2010, Weiher applied to Northwestern for additional disability insurance coverage. In his application, Wei-her specifically agreed that the Northwestern policy would replace his Great-West *396 policy and that he would terminate the Great-West policy within 90 days of the date of the application. The application warned that any policy issued could be rescinded if the Great-West policy was not cancelled.
Northwestern offered Weiher a disability insurance policy with a monthly benefit of $8,400. On July 20, 2010, before receiving the policy, Weiher signed an Amendment to Application, which supplemented and amended the May 4, 2010, application, and agreed to terminate the Great-West policy by its next premium due date. The Amendment to Application also warned of Northwestern’s rights to rescind the policy if the Great-West policy was not canceled. Weiher did not cancel the Great-West policy.
In 2012, Weiher began to suffer from neurological and autoimmune symptoms and could no longer practice dentistry safely. He submitted claims for disability benefits to Great-West and Unum. Great-West and Unum investigated his claim, ultimately determined he was totally disabled from his profession, and paid his claims.
Weiher also made a claim to Northwestern, who quickly discovered he had not terminated his Great-West policy. Northwestern then reviewed whether it would have issued the policy to Weiher if it had known he would not cancel the Great-West policy. Northwestern determined it would not have issued the policy because, in its view, doing so increased the risk that Weiher would be over-insured and would therefore have more incentive to make a claim under the policy. Northwestern notified Weiher that it was rescinding the policy.
Northwestern filed an action in the United States -District Court for the District of Minnesota claiming Weiher’s promise to cancel the Great-West policy was a misrepresentation that entitled it to rescind the policy. Weiher counter-claimed for breach of contract. Both parties moved for summary judgment. Construing Weiher’s promise to cancel the Great-West policy as a warranty, the district court applied Wisconsin law.[2] The district court found that Northwestern was entitled to rescind the policy under Wisconsin Statutes § 631.11(3)[3] because Weiher’s failure to terminate the GreaU-West policy increased the risk to Northwestern. The district court entered judgment in favor of Northwestern. Weiher appeals.
II. Discussion
Our review of a district court’s decision on cross-motions for summary judgment is de novo. Netherlands Ins. Co. v. Main St. Ingredients, LLC, 745 F.3d 909, 912 (8th Cir.2014). Summary judgment is appropriate “if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Id. (quoting Fed.R.Civ.P. 56(a)).
The parties agree on appeal that Wisconsin law applies. Accordingly, we *397 apply substantive Wisconsin law in this diversity action. Netherlands Ins., 745 F.3d at 912-13. “We review the district court’s application of [Wisconsin law] de novo without deference.” Gersham v. Am. Cas. Co. of Reading, PA 251 F.3d 1159, 1161 (8th Cir.2001) (internal quotation marks omitted).
Under Wisconsin law, the interpretation of an insurance contract and the interpretation of a statute are both questions of law reviewed de novo. Fox v. Catholic Knights Ins. Soc., 263 Wis.2d 207, 665 N.W.2d 181, 186-87 (2003). “We must predict how the Supreme Court, of [Wisconsin] would rule, and we follow decisions of the intermediate state court when they are the best evidence of [Wisconsin] law.” Netherlands Ins. Co., 745 F.3d at 913 (internal quotation marks omitted).
Under Wisconsin law, insurance contracts are “governed by the same rules that govern contract interpretation in general.” Wis. Label Corp. v. Northbrook Prop. & Cas. Ins. Co., 233 Wis.2d 314, 607 N.W.2d 276, 282 (2000). As with other contracts, Wisconsin courts seek to “determine and give effect to the intent of the contracting parties.” Am. Family Mut. Ins. Co. v. Am. Girl, Inc., 268 Wis.2d 16, 673 N.W.2d 65, 73 (2004). Where the language of the insurance contract is unambiguous, Wisconsin courts apply the contract’s literal meaning. Wis. Label Corp., 607 N.W.2d at 282. Although insurance policies are construed as they would be understood by a reasonable insured, Wisconsin courts “do not interpret insurance policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium.” Am. Girl, 673 N.W.2d at 73.
Wisconsin state law limits the circumstances under which an insurer may rescind an insurance policy. See Wis. Stat. § 631.11.[4] The district court in this case applied § 631.11(3), which pertains to failures of condition and breaches of promissory warranties after an effective policy is in place. Neither party argues on appeal that the district court erred in construing Weiher’s promise to cancel the Great-West policy as a promissory warranty governed by § 631.11(3). Further, neither party disputes that Weiher’s failure to cancel the Great-West policy occurred after an effective policy was in place.
A promissory warranty is “[a] warranty that facts will continue to be as stated throughout the policy period, such that a failure of the warranty provides the insurer with a defense to a claim under the policy.— Also termed continuing warranty.” Fox, 665 N.W.2d at 190 (emphasis omitted) (quoting Black’s Law Dictionary). “Promissory warranties are those that require that something shall or shall not be done after the policy takes effect.” Id. at 189 (emphasis , omitted) (quoting comment to Wisconsin Civil Jury Instruction 3105); accord 6 Couch on Ins. § 81:14 (“A promissory warranty is one by which the insured stipulates that something shall be done or omitted after the policy takes effect and during its continuance and has the effect of a condition subsequent.”). Under the facts and procedural posture of this case, we cannot say the district court erred in construing Weiher’s promise to cancel the Northwestern policy as a promissory warranty that was subject to the restrictions of § 631.11(3).
Weiher concedes that he failed to cancel his Great-West policy and this fail *398 ure existed at the time of loss. He contends, however, the district court erred in not requiring Northwestern to meet its burden to show that his failure to cancel the Great-West policy “increased [Northwestern’s] risk at the time of the loss.” See Wis. Stat. § 681.11(3). “The burden of proof on an insurance company seeking to rescind an insurance contract is ... clear and convincing evidence as to each element of the statute.” Pum v. Wis. Physicians Serv. Ins. Corp., 298 Wis.2d 497, 727 N.W.2d 346, 363 (Ct.App.2006).
As an initial matter,- the' parties dispute what risk Northwestern insured against in its policy. Weiher asserts that the risk was that he “might become disabled and be unable to work in his occupation.” He argues Northwestern has not shown that the failure to cancel the Great-West policy increased the risk that he would become disabled and unable to work. Northwestern concedes it has not shown that the existence of additional insurance actually increased the risk that Weiher would suffer a medical condition that would give rise to a disability. Instead, Northwestern contends the risk it insured against was that Weiher would seek and obtain disability benefits. Part of that, Northwestern agrees, was the risk that Weiher would suffer a medical condition that rendered him physically or mentally disabled. Another part, however, was the risk that he would make and perpetuate a disability claim. Northwestern argues that an over-insured individual is more likely to make and perpetuate a claim, thereby increasing its risk.
It is not necessary to resolve the parties’ dispute concerning whether risk, as that term is used in § 631.11(3), includes over-insurance.[5] Even assuming Northwestern’s risk included the risk of over-insurance, Northwestern failed to show it was undisputed that Weiher was over-insured at the time of the loss. See Wis. Stat. § 631.11(3). As support for its argument, Northwestern first relies on its Financial Underwriting Standards (Underwriting Standards). For example, Northwestern points to Section 626.1.1 of its Underwriting Standards, which provides:
Financial underwriting is the evaluation of the financial aspects of an application to avoid over-insurance. The company is concerned about over-insurance because experience has shown that it leads to an increase in the number of claims and an increase in the length of claims. Specifically, when applying financial underwriting standards, an underwriter will evaluate four key variables: earned income, unearned income, net worth, and bankruptcy.
Northwestern further relies on its underwriting standard on Issue and Participation, which provides:
Northwestern Mutual Disability Insurance coverage is designed to replace a portion of the financial loss that occurs if an Insured becomes disabled and cannot work. An important aspect of disability underwriting is determining the appropriate portion of the financial loss to insure. It is desirable that the Insured have enough coverage to continue to provide necessities in the event of disability. It is undesirable to allow so much coverage that the Insured is better off, financially, after disability than before disability. Such a situation makes it tempting to even highly motivated people to continue receiving benefits rather than return to work. This is costly to the rest of our policy owners, and also impedes the recovery of the insured. In short, over insurance is not a healthy situation for any of our policy *399 owners. To minimize the risk of over insurance, Northwestern Mutual limits the amount of coverage in which we will participate on any one life. Total coverage on any one life (including all outside coverage) will not normally be allowed to exceed Northwestern Mutual’s published limits.
This evidence may support Northwestern’s contention that it would not have issued the policy to Weiher had it known Weiher would not cancel the Great-West policy. But the question is not whether Northwestern would (or would not) have issued the policy had it known what it knows now. The question is whether, after the policy went into effect, the failure to cancel the policy increased the risk at the time of the loss, i.e., when Weiher became disabled and made a claim for benefits in 2012.[6] Furthermore, § 631.11(3) speaks to a particular policy, and an insurer’s ability to rescind that particular policy, not to general risks taken into consideration by underwriters as a whole in deciding whether to issue certain types of policies as described in these Underwriting Standards. See Wis. Stat. § 631.11(3) (“no breach of a promissory warranty constitutes grounds for rescission of ... an insurance policy unless it exists at the time of the loss and either increases the risk at the time of the loss or contributes to the loss.” (emphasis added)). General underwriting principles provide a helpful backdrop to explain the nature of a particular risk, but they do not conclusively answer the specific question at issue here.
Next, Northwestern presented the testimony of its Standards Compliance Consultant, Don Seebach. Seebach’s statements likewise do not address whether Weiher was over-insured in 2012, thus resulting in an increased risk to Northwestern. In an affidavit, Seebach averred that Northwestern
specifically relied on Dr. Weiher’s representation that he would terminate his [Great-West] disability policy. His failure to do so increased the risk to Northwestern Mutual. Northwestern Mutual would not have issued a Disability Income Policy ... had it known that Dr. Weiher would not terminate his [Great-West] Disability Policy.
Again, this testimony may be sufficient to show that Weiher’s agreement to cancel the Great-West policy was material to Northwestern’s decision to issue the policy. But rescission pursuant to § 631.11(3) does not turn on a finding of materiality. Cf. Wis. Stat. § 631.11(1)(b). And See-bach’s simple and unsupported statement that Weiher’s failure to cancel “increased the risk” is insufficient to meet Northwestern’s burden on rescission as to this particular policy. See Pum, 727 N.W.2d at 353.
Northwestern also relies on Seebach’s deposition testimony that Weiher’s failure to cancel the Great-West policy increased the risk “from an underwriting standpoint,” because “he had more coverage in force than we would allow.” That increased the risk, according to Seebach, because the amount the person receives in disability benefits “would be possibly higher than what they could earn while in their occupation.” However, when specifically asked whether he knew if that was the case with Weiher, Seebach conceded he did not know and was “just talking generalities.” Seebach also admitted that he was not aware of any other way that Wei- *400 her’s failure to cancel the Greab-West policy might have increased Northwestern’s risk.
Northwestern’s evidence is insufficient to show that it is entitled to summary judgment because the evidence does not address the specific insurance policy at issue in this case. Even if a general aversion to “over-insurance,” as described in the Underwriting Standards and testified to by Seebach, is sufficient to prove that Weiher’s breach of his promise to cancel the Greab-West policy “increase[d] the risk” to Northwestern, it does not address whether his breach “increase[d] the risk at the time of the loss.” Weiher, on the other hand, offered evidence showing that, based on his income in 2012, he was not over-insured at the time of the loss. And even Northwestern’s Disability Benefits Team Lead Consultant, Tricia Hoesly, testified that the policy did not prevent Weiher from cancelling the Greab-West policy but then signing up for another disability policy from a different insurance company— which also would have provided him with additional disability coverage. Accordingly, based on the record before us, we conclude Northwestern was not entitled to summary judgment under § 631.11(3).
Northwestern alternatively asserts it is allowed to rescind the insurance contract pursuant to § 631.11(1)(b) because the failure to cancel the Greab-West policy also can be construed as a “misrepresentation or breach of affirmative warranty” which under some circumstances can be proper grounds for rescission of an insurance contract. See Wis. Stat. § 631.11(1)(b). Even if so construed, there appears to remain a factual dispute concerning whether Weiher “knew or should have known that the representation was false” or “was made with intent to deceive” Id. Weiher claims he mistakenly failed to cancel the policy; Northwestern alleges otherwise. Such factual disputes are usually questions for the jury. Pum, 727 N.W.2d at 352. In any event, the district court did not address this alternative ground, and we decline to do so for the first time on appeal. See Loftness Specialized Farm Equip., Inc. v. Twiestmeyer, 742 F.3d 845, 851 (8th Cir.2014) (“When it would be beneficial for the district court to consider an alternative argument in the first instance, we may remand the matter to the district court.”). The district court may consider on remand Northwestern’s alternative ground for summary judgment.[7]
III. Conclusion
Accordingly, we reverse the decision of the district court to grant Northwestern summary judgment and remand for further proceedings.

. We have jurisdiction under 28 U.S.C. § 1291.

. Although Northwestern initially disputed that Wisconsin law applied, it has abandoned that position on appeal. See Freitas v. Weils Fargo Home Mortg., Inc., 703 F.3d 436, 438 n. 3 (8th Cir.2013).

. Section 631.11 (3) provides:
Effect of Failure of Condition or Breach of Promissory Warranty. No failure of a condition prior to a loss and no breach of a promissory warranty constitutes grounds for rescission of, or affects an insurer's obligations under, an insurance policy unless it exists at the time of the loss and either increases the risk at the time of the loss or contributes to the loss. This subsection does not apply to failure to tender payment of premium.

. A rescission based on a misrepresentation or breach of affirmative warranty is governed by § 631.11(l)(b), and a rescission based on a failure of condition or breach of promissory warranty is governed by § 631.11(3).

. The statute does not define risk.

. We respectfully disagree with the dissent's characterization of how we construe the phrase "increases the risk at the time of the loss.” In fact, we see little, if any, difference between the dissent’s view and our view of "the question” at issue. (Dissenting Opinion, infra, at 404.)

. We likewise decline to consider Weiher's argument that he is entitled to summary judgment on his breach of contract counterclaim. Because the district court concluded Northwestern had properly rescinded the policy, it denied Weiher’s motion for summary judgment. We believe "it would be beneficial for the district court to consider this issue in the first instance.” Id.