COURT OF APPEALS
DECISION
DATED AND FILED

December 22, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1289**

STATE OF WISCONSIN

Cir. Ct. No. 2020TP18

IN COURT OF APPEALS
DISTRICT IV

IN RE THE TERMINATION OF PARENTAL RIGHTS TO B. K.,
A PERSON UNDER THE AGE OF 18:

C. K. AND A. K.,

PETITIONERS-RESPONDENTS,

V.

K. L.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Portage County: THOMAS B. EAGON, Judge. *Affirmed.*

¶1 FITZPATRICK, J.[1] Kate appeals an order of the Portage County Circuit Court terminating her parental rights to her daughter, Beth.[2] The circuit court granted partial summary judgment in favor of April and Charles—Beth's paternal grandparents ("the Grandparents")—on the ground that, pursuant to WIS. STAT. § 48.415(1), Kate abandoned Beth without good cause. Kate argues that partial summary judgment should not have been granted because there are genuine issues of material fact as to whether she had good cause for abandoning Beth. I affirm.

## BACKGROUND

¶2 There is no dispute as to the following material facts.

¶3 Kate is Beth's biological mother. In 2013, Beth was taken away from her parents and into protective custody at the age of four months. A circuit court found that Beth was a child in need of protection and services due to neglect by her parents and ordered that she be placed with the Grandparents. Beth has resided with the Grandparents since that time. In February 2015, after both Kate and Beth's father failed to meet court-ordered conditions for Beth's return, a court appointed the Grandparents as Beth's guardians. At that time, the court did not impose any supervision requirements on Kate's visits with Beth.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Consistent with the parties' briefing and pursuant to the policy underlying WIS. STAT. § 809.19(1)(g), I use the pseudonyms "Kate" for appellant, K.L., "Beth" for the minor, B.K., "Charles" for the respondent, C.K., and "April" for the respondent, A.K.

¶4      Approximately four months after the Grandparents were appointed as guardians, Kate was arrested for discharging a firearm in the direction of a person at her residence. Kate was intoxicated at the time. Kate was convicted of recklessly endangering safety as a result of that incident. Unsurprisingly, the guardianship court then modified the guardianship order to require that Kate's visits with Beth be supervised.

¶5      At first, Kate's visits were supervised by Kate's aunt. However, after an incident in which the aunt permitted Kate to take Beth to a hotel for a weekend in violation of the guardianship court order, the Grandparents refused to allow the aunt to supervise any more visits. After this incident, April began supervising Kate's visits. At one point, the guardianship court authorized Kate's parents to provide supervision for Kate's visits with Beth, but they stopped supervising after their relationship with Kate became "strained." April then resumed supervising Kate's visits with Beth. In October 2017, the guardianship court granted Kate supervised visits with Beth twice per month for ninety minutes each.

¶6      In December 2018, April supervised one of Kate's visits with Beth and Kate's three other children. During the visit, April heard one of the children say "you bit me," and April determined that Kate had disciplined one of Kate's children other than Beth by biting that child on the neck. April reported the incident to the children's father, law enforcement, and Child Protective Services. April did not notify Kate that she did so. In January 2019, after Kate was informed that April had reported the incident, Kate filed a petition to terminate the Grandparents' guardianship of Beth. However, the court dismissed that petition for failure to prosecute because Kate failed to appear for a final pretrial conference

and the trial. The court ordered that, as a result of her failure to appear, Kate was required to pay the $1,500 outstanding fees incurred by the guardian ad litem.

¶7 In 2020, in an action separate from the guardianship, the Grandparents filed a petition to terminate Kate's parental rights to Beth. The Grandparents asserted that Kate had abandoned Beth under WIS. STAT. § 48.415(1)(a)3.[3] According to the petition, Kate failed to visit or communicate with Beth without good cause between December 19, 2018 and December 19, 2019. In support of the Grandparents' partial summary judgment motion, April filed an affidavit asserting, among other things, that she contacted Kate at least three times in the spring of 2019 to schedule a visit, but Kate refused to visit or talk to Beth. In response to one such communication to Kate from April, Kate sent the following text message to April:

> I will be refiling [a petition in the guardianship]. Either give me my daughter and get out of my life, or figure out a way that you can keep her, or you keep her and you get out of my life, and I will have a relationship with her when she's an adult and can understand the emotional abuse you've put on her.

---

[3] WISCONSIN STAT. § 48.415 provides in pertinent part:

(1) Abandonment.

(a) Abandonment … shall be established by proving any of the following:

….

3. The child has been left by the parent with any person, the parent knows or could discover the whereabouts of the child and the parent has failed to visit or communicate with the child for a period of 6 months or longer.

Sec. 48.415(1)(a)3.

April's affidavit also stated that Kate asked April for pictures of Beth in October 2019, but Kate did not ask to visit or talk to Beth in that communication. April provided the requested pictures to Kate.

¶8     In her response concerning the Grandparents' partial summary judgment motion, Kate did not dispute that:  she failed to visit or communicate with Beth during the applicable time period; and April contacted her in the spring of 2019 to schedule a visit.[4]  Kate does not dispute those facts on appeal.  Instead, Kate contended to the circuit court, and contends on appeal, that she had "good cause" for failing to do so pursuant to WIS. STAT. § 48.415(1)(c).[5]

¶9     The circuit court granted the Grandparents' motion for partial summary judgment.  The court determined that there was at least a six-month period in which Kate failed to visit or communicate with Beth, and that failure was without good cause.  The court then held a dispositional hearing and entered an order terminating Kate's parental rights to Beth.[6]  Kate appeals the circuit court's order.

¶10     Additional material facts are discussed in the following discussion.

---

[4]  I note that Kate's response in the circuit court explicitly declined to concede the ground for abandonment.  Nonetheless, Kate's response, and affidavit, did not dispute that she failed to visit or communicate with Beth from December 19, 2018, to December 19, 2019.

[5]  The text of the "good cause" defense under WIS. STAT. § 48.415(1)(c) is reproduced in pertinent part later in this opinion.

[6]  Beth's biological father agreed to the voluntary termination of his parental rights and is not a party to this appeal.

**DISCUSSION**

¶11 On appeal, Kate argues that the circuit court erred in granting partial summary judgment because there remain genuine issues of material fact regarding her good cause defense. I begin by setting forth governing principles and this court's standard of review regarding termination of parental rights proceedings.

## I. Governing Principles Regarding Termination of Parental Rights and This Court's Standard of Review.

¶12 Termination of parental rights proceedings involve two phases. *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402. In the first, or "grounds," phase of the proceeding, the court determines "whether grounds exist for the termination of parental rights." *Id.* (citing WIS. STAT. § 48.424(1)). During this phase, "the petitioner must prove by clear and convincing evidence that one or more of the statutorily enumerated grounds for termination of parental rights exist." *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856 (citing WIS. STAT. § 48.31(1)). If the petitioner proves one or more grounds for termination by clear and convincing evidence, "the court shall find the parent unfit." *Id.*, ¶25 (citing WIS. STAT. § 48.424(4)). In the second, or "dispositional," phase the court must determine "whether it is in the best interest of the child that the parent's rights be permanently extinguished." *Id.*, ¶27 (citing WIS. STAT. § 48.426(2)).

¶13 This appeal involves the circuit court's grant of partial summary judgment in favor of the Grandparents with respect to the ground for termination of Kate's parental rights to Beth. This court reviews a grant of partial summary judgment independently, applying the same methodology as the circuit court. *L.L.N. v. Clauder*, 209 Wis. 2d 674, 682, 563 N.W.2d 434 (1997). Summary

judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). "A factual issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶24, 305 Wis. 2d 538, 742 N.W.2d 294. "A 'material fact' is one that is 'of consequence to the merits of the litigation.'" *Id.* (citation omitted).

¶14     In determining whether to grant summary judgment, "a court first examines the pleadings to determine whether a claim for relief is stated and whether a material issue of fact is presented." *L.L.N.*, 209 Wis. 2d at 682. Here, the parties do not dispute that the pleadings state a claim and present the existence of factual issues.

¶15     A court "next considers the moving party's affidavits or other proof to determine whether the moving party has made a prima facie case for summary judgment under [WIS. STAT.] § 802.08(2)." *Id.* at 683. As noted, Kate does not dispute that the Grandparents have established that she did not visit or communicate with Beth from December 19, 2018, to December 19, 2019. As a result, the Grandparents have made a prima facie case for partial summary judgment based on the abandonment ground set forth in WIS. STAT. § 48.415(1)(a)3.

¶16     Next, "the opposing party must show, by affidavit or other proof, the existence of disputed material facts or undisputed material facts from which reasonable alternative inferences may be drawn that are sufficient to entitle the opposing party to a trial." *L.L.N.*, 209 Wis. 2d at 683. Here, Kate asserts that she

had good cause for failing to visit or communicate with Beth for more than six months between December 19, 2018, and December 19, 2019, and a trial is necessary on that issue.

¶17 Affidavits and other proof submitted by the parties are viewed in a light most favorable to the party opposing summary judgment, and any doubts as to the existence of a genuine issue of material fact are resolved against the moving party. *Id.* at 684. Additionally, this court "draw[s] all reasonable inferences from the evidence in the light most favorable to the non-moving party." *Pum v. Wisconsin Physicians Serv. Ins. Corp.*, 2007 WI App 10, ¶6, 298 Wis. 2d 497, 727 N.W.2d 346.

¶18 Partial summary judgment can be granted in the grounds phase of a termination of parental rights proceeding. *Steven V.*, 271 Wis. 2d 1, ¶6. A court may grant partial summary judgment during this phase if the moving party establishes that "there is no genuine issue as to any material fact regarding the asserted grounds for unfitness under WIS. STAT. § 48.415, and, taking into consideration the heightened burden of proof specified in WIS. STAT. § 48.31(1) and required by due process, the moving party is entitled to judgment as a matter of law." *Id.*; *see* WIS. STAT. § 802.08(2). Our supreme court has stated that "[t]he propriety of summary judgment is determined case-by-case" and emphasized that summary judgment procedures may be used for any statutory ground for termination of parental rights. *Steven V.*, 271 Wis. 2d 1, ¶37 n.4; *see also* **State v. Bobby G.**, 2007 WI 77, ¶40, 301 Wis. 2d 531, 734 N.W.2d 81.

## II. The Circuit Court Properly Granted Partial Summary Judgment.

¶19 As noted, Kate argues on appeal that there are genuine issues of material fact as to whether she has demonstrated, pursuant to WIS. STAT.

§ 48.415(1)(c), a "good cause" defense to the abandonment ground established by the Grandparents. This statutory defense as advanced by Kate requires her to prove the following by a preponderance of the evidence:

> (c) Abandonment is not established under par. (a) … 3. if the parent proves all of the following by a preponderance of the evidence:
>
> 1. That the parent had good cause for having failed to visit with the child throughout the time period specified in par. (a) … 3.
>
> 2. That the parent had good cause for having failed to communicate with the child throughout the time period specified in par. (a) … 3.
>
> 3. If the parent proves good cause under subd. 2. that one of the following occurred:
>
> a. The parent communicated about the child with the person or persons who had physical custody of the child during the time period specified in par. (a) … 3.
>
> b. The parent had good cause for having failed to communicate about the child with the person or persons who had physical custody of the child … throughout the time period specified in par. (a) … 3.

Sec. 48.415(1)(c).[7] Accordingly, in order to have a trial, it is Kate's burden to establish that there are genuine issues of material fact regarding each of the following for a time period of more than six months from December 19, 2018, to December 19, 2019: (1) Kate had good cause for having failed to visit with Beth; and (2) Kate had good cause for having failed to communicate with Beth <u>and</u> for having failed to communicate about Beth with the Grandparents.

---

[7] Kate does not contend that Beth's age or condition would have rendered Kate's communication with Beth meaningless. Accordingly, a portion of WIS. STAT. § 48.415(1)(c)3. which concerns that statutory defense was removed from the statutory subpart quoted above.

¶20    The term "good cause" is not defined in this statute, but a standard jury instruction regarding abandonment, WIS JI—CHILDREN 314, sets forth the following factors pertinent to this situation which may aid in determining whether a parent had good cause for failing to visit or communicate:  (1) "whether [the parent] had a reasonable opportunity to visit or communicate with [the child] or communicate with [the person] who had physical custody of [the child]"; (2) "attempts to contact [the child]"; (3) "whether person(s) with physical custody of [the child] prevented or interfered with efforts by [the parent] to visit or communicate with [the child]"; and (4) "any other factors beyond [the parent's] control which prevented or interfered with visitation or communication."[8]

¶21    For the following reasons, I conclude that Kate has not demonstrated a genuine dispute of material fact as to her good cause defense.[9]

---

[8] In her brief-in-chief, rather than referring to WIS JI—CHILDREN 314, Kate refers to WIS JI—CHILDREN 313 which concerns a statutory subpart not applicable in this matter. However, that minor error is easily overlooked because Kate's brief clearly intends to refer to the applicable jury instruction.

[9] The Grandparents assert in their response brief that, in her brief-in-chief, Kate relies on portions of her testimony from the dispositional phase of the proceedings that occurred after the circuit court granted partial summary judgment. In her reply brief, Kate refers to that assertion from the Grandparents as "puzzling and false." It is neither. Accordingly, I do not rely on the dispositional hearing testimony because that hearing occurred after the circuit court decided the partial summary judgment motion. *See* ***Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.***, 146 Wis. 2d 568, 573, 431 N.W.2d 721 (Ct. App. 1988) (stating that this court reviews summary judgment motions "on the record as it existed when [the motions] were decided by the trial court, not on a record expanded by the testimony at trial"). Counsel should not continue this practice. In addition, Kate asserts in her reply brief—which I note has a different author than the author of her brief-in-chief—that those portions of the dispositional hearing testimony referenced facts that had already been established by Kate's deposition testimony that occurred prior to the court's partial summary judgment ruling. That is not correct. Those portions of the deposition transcript relied on by Kate, in an attempt to backfill on appeal her dispositional hearing testimony, refer to events outside the time period in dispute or are so vague as to be of no use in the analysis.

(continued)

¶22 First, Kate argues that she had good cause for failing to visit or communicate with Beth because of her subjective feelings about April's supervision of visits with Beth. Kate supports this argument with the following statement from her affidavit: "I didn't feel comfortable with [April] supervising the visits. My mother was not a reliable supervisor. [April] no longer wanted [Kate's aunt] to supervise. I had no other options for supervision. I wanted to see my daughter." According to Kate's argument on appeal, she was uncomfortable with April's supervision because April had reported Kate to the police and Child Protective Services after the biting incident in December 2018, and Kate was worried that April would file similar reports if April continued to supervise visits.[10]

---

The Grandparents also assert that record citations to the testimony from the dispositional hearing in Kate's brief-in-chief are inaccurate. The Grandparents are correct. For the reasons stated above, I do not consider Kate's testimony from the dispositional hearing. Nonetheless, I remind counsel who authored the brief-in-chief to provide accurate citations to the record. *Forest Cnty. Potawatomi Cmty. v. Township of Lincoln*, 2008 WI App 156, ¶14 n.8, 314 Wis. 2d 363, 761 N.W.2d 31 (Arguments not supported by accurate citations to the record do not comply with WIS. STAT. RULE 809.19(1)(e), and "this court may refuse to consider such arguments.").

[10] Kate supports her good cause arguments with her testimony from a deposition. However, Kate does not mention her deposition testimony until her reply brief on appeal and did not mention her deposition testimony in argument or briefing in the circuit court. Normally, this court "do[es] not consider matters argued for the first time in a reply brief because that precludes the respondent from being able to address those arguments." *Techworks, LLC v. Wille*, 2009 WI App 101, ¶28, 318 Wis. 2d 488, 770 N.W.2d 727. Kate's failure to address that testimony in her brief-in-chief may be unfair to the Grandparents because they did not have an opportunity to respond to the specifics of that testimony. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) ("It is inherently unfair for an appellant to withhold an argument from its main brief and argue it in its reply brief because such conduct would prevent any response from the opposing party."). At any rate, most of the deposition testimony of Kate that she relies on for this particular argument concerns events outside the applicable time period of December 2018 to December 2019 and, for the rest, the bases for her actions enunciated at Kate's deposition are essentially the same as those already summarized for this argument.

¶23    In response, the Grandparents argue that Kate's argument is similar to an argument rejected by this court in ***Brown County Human Services v. B.P.***, 2019 WI App 18, 386 Wis. 2d 557, 927 N.W.2d 560.  In that case, the Brown County Human Services Department ("the Department") petitioned to terminate the parental rights of B.P. and T.F. on the ground that they abandoned their daughter pursuant to WIS. STAT. § 48.415(1)(a)3.  ***B.P.***, 386 Wis. 2d 557, ¶6.  On appeal, this court affirmed the circuit court's grant of summary judgment as to B.P., but reversed as to T.F.[11]  ***Id.***, ¶¶42, 45.  B.P. argued on appeal that he had good cause for failing to visit or communicate with his daughter because he had mental health issues and "emotional strain" during the applicable time period.  ***Id.***, ¶43.  This court explained that there was no genuine issue regarding these facts because B.P. failed to demonstrate a causal connection between his mental health issues and emotional strain and his failure to visit or communicate with his daughter.  ***Id.***, ¶45.  Even if the facts were viewed "in a light most favorable to B.P.," this court concluded that "any inference or conclusion as to how these issues affected his ability to visit or communicate with [his daughter] would be based upon sheer speculation."  ***Id.***, ¶46.

¶24    Even when viewed in a light most favorable to her, Kate's assertions do not constitute a genuine issue of material fact as to Kate's good cause argument because no reasonable jury could return a verdict in Kate's favor on this particular issue.  *See **id.***  Kate does not explain why a single report filed by April—which Kate admits did not lead to "any further action" by the police or Child Protective Services—was a reasonable basis to avoid visiting or attempting to visit Beth for

---

[11]  I address this court's decision regarding T.F. later in this opinion.

an entire year. *See* WIS JI—CHILDREN 314 n.2 (a parent raising a good cause defense must prove that he or she had "good cause for having failed to visit … with the child during the period in issue"). Also, Kate articulates no arguable basis as to how her subjective feelings about April's supervision of visits prevented her from communicating with Beth for an entire year in ways that did not involve supervised visits, such as calling or sending a letter. Moreover, Kate's argument does not raise a material issue of fact regarding her failure to communicate with the Grandparents about Beth for an entire year, December 2018 to December 2019. *See* WIS. STAT. § 48.415(1)(c)3.b. Thus, because there is no evidence that would permit a reasonable jury to return a verdict in Kate's favor on this portion of her good cause argument, and, among other things, her argument would require a finder of fact to speculate, Kate has not shown a genuine issue of fact that defeats summary judgment. *See* ***B.P.***, 386 Wis. 2d 557, ¶46; ***Schmidt***, 305 Wis. 2d 538, ¶24 ("A factual issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.").

¶25 Second, Kate argues that she had good cause for failing to visit or communicate with Beth because April interfered with Kate's ability to do so. The evidentiary support Kate provides for this argument is reasonably summarized in the following statement from her affidavit: "[April] has complete control over access to my daughter and she is unreasonable in her decisions about access to my daughter."

¶26 However, even when viewed most favorably to Kate, the assertions on which she relies do not demonstrate that April's actions caused Kate's failure to visit or communicate with Beth during the applicable time period. *See* ***B.P.***, 386 Wis. 2d 557, ¶45. Put another way, Kate does not identify any evidence that April actually prevented her from visiting or communicating with Beth. *See* WIS.

13

STAT. § 802.08(3) ("[T]he adverse party's response, by affidavits or as otherwise provided in this section, must set forth *specific facts* showing that there is a genuine issue for trial." (emphasis added)). Indeed, Kate does not dispute that April reached out to her three times during the applicable time period to arrange a visit with Beth. Kate does not dispute that she sent the following text message to April in the spring of 2019:

> I will be refiling [a petition in the guardianship]. Either give me my daughter and get out of my life, or figure out a way that you can keep her, or you keep her and you get out of my life, and I will have a relationship with her when she's an adult and can understand the emotional abuse you've put on her.

These facts demonstrate that April did not prevent Kate from visiting or communicating with Beth but, rather, provided Kate with multiple opportunities to visit or communicate with Beth. With respect to April's actions, Kate does not explain or point to any evidence to demonstrate that those actions completely prevented Kate from visiting or communicating with Beth during this time period. Moreover, Kate does not attempt to explain away her failure to communicate with the Grandparents about Beth from December 2018 to December 2019 (the text message just quoted and an October 2019 request for pictures of Beth cannot reasonably be seen as such a "communication"). There is no basis to conclude that Kate's allegations about April's purported "complete control" and "unreasonable" decisions regarding visitation would permit a reasonable jury to return a verdict in Kate's favor, and there is no genuine issue of fact as to this portion of Kate's good cause defense. *See **B.P.***, 386 Wis. 2d 557, ¶46; *see also **Schmidt***, 305 Wis. 2d 538, ¶24.

¶27 Third, Kate alleges that she had good cause for failing to visit or communicate with Beth during the applicable time period because she attempted

to terminate the Grandparents' guardianship of Beth as it was her only option as a person of purportedly limited resources. Even when viewed most favorably to Kate, however, Kate's attempt to obtain a termination of the guardianship does not create a genuine issue of fact because no reasonable jury could return a verdict in Kate's favor on her good cause defense based on those facts. *See **B.P.***, 386 Wis. 2d 557, ¶46. Significantly, Kate does not explain how her actions in the guardianship proceeding prevented or interfered with her ability to visit or communicate with Beth (or communicate with the Grandparents about Beth). Kate's only discernible explanation regarding a causal connection is a vague assertion that her actions in the guardianship proceedings are "relevant" to "factors beyond [Kate's] control which prevented or interfered with visitation or communication." Any possible inference or conclusion as to how these facts affected Kate's ability to visit or communicate with Beth for an entire year would be based on "sheer speculation." *See **id.*** Therefore, Kate's actions in the guardianship proceeding do not raise a genuine issue of material fact regarding her good faith defense.[12]

¶28 Fourth, Kate relies on a portion of this court's analysis in ***B.P.*** In that case, T.F. argued that she had good cause for failing to visit with her daughter because she testified that she was unable to obtain transportation to travel the over 100-mile distance between her residence and her daughter's placement. ***Id.***, ¶35. T.F. also testified that the Department wanted her to receive "services" before she

---

[12] In her reply brief on appeal, and for the first time, Kate argues that the guardianship court erroneously required Kate to pay outstanding guardian ad litem fees. I decline to consider this argument because it is undeveloped in that the order complained of was entered in an action separate from this case, and Kate did not appeal that decision in the separate guardianship action. *See **State v. Pettit***, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (holding that this court may decline to address undeveloped arguments).

15

visited her daughter, but did not advise her of what those "services" entailed, and the Department failed to arrange for those to be provided. *Id.* This court stated that T.F.'s testimony created a genuine issue of material fact as to whether T.F. had good cause for failing to visit her daughter. *Id.*, ¶36.

¶29 Kate argues that the facts concerning her good cause defense are "far more compelling" than the facts supporting T.F.'s good cause defense. I disagree. As explained above, Kate has not shown a genuine issue of material fact that April caused Kate to not visit or communicate with Beth, or that anyone caused Kate not to communicate with the Grandparents about Beth, for an entire year and, therefore, has not demonstrated that a jury could reasonably find that Kate's allegations about April's actions constitute good cause. Also, Kate has not explained how her inability to obtain a termination of the Grandparents' guardianship of Beth prevented her from visiting or communicating with Beth. Thus, this court's holding regarding T.F.'s good cause defense in *B.P.* does not alter the conclusion that Kate has failed to demonstrate a genuine issue of fact as to her good cause defense.

¶30 Fifth, Kate argues that partial summary judgment should not have been granted because the circuit court "weighed the evidence" in evaluating her good cause defense. According to Kate, the circuit court "made its own determination about whether the facts alleged amounted to good cause," not only because the court minimized Kate's concerns about April's supervision, but also because the court's final order failed to apply the proper standard for summary judgment. This argument fails because this court's review of the circuit court's partial summary judgment ruling is de novo. *L.L.N.*, 209 Wis. 2d at 682. I am not concluding that the circuit court erred in this regard but, even if it did, any such error makes no difference. This court does not give any deference to the circuit

16

court's reasons for granting or denying summary judgment and must independently decide whether the evidence presented by the parties demonstrates a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2); ***Hall v. Turtle Lake Lions Club***, 146 Wis. 2d 486, 487, 431 N.W.2d 696 (Ct. App. 1988) ("On review of a summary judgment, the court of appeals applies the same methodology as the trial court and no deference is paid to the decision of the trial court."). Thus, this argument does not affect the conclusion that partial summary judgment was proper in these circumstances.

## CONCLUSION

¶31 For the foregoing reasons, the order of the circuit court is affirmed.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.